**UNITED STATES of America, Plaintiff,**

v.

**Robert Lyle LAMP, Jr., Defendant.**

**No. SA–84–CR–121(1).**

United States District Court,
W.D. Texas,
San Antonio Division.

Feb. 14, 1985.

Vincent D. Callahan, San Antonio, Tex., for defendant.

Mitchell Weidenbach, Asst. U.S. Atty., San Antonio, Tex., for plaintiff.

## MEMORANDUM OPINION AND ORDER

SESSIONS, Chief Judge.

ON THIS DATE came on to be heard the Oral Motion of the Defendant, Robert Lyle Lamp, Jr., to be admitted to bail pending appeal of his conviction in the above-styled and numbered cause. For the reasons set forth below, the Court finds that Defendant has met his burden of proving by clear and convincing evidence that he is not likely to flee or present a danger to any person or the community, and that his appeal presents a substantial question of fact or law likely to result in reversal or an order for a new trial. Therefore, the Court will grant Defendant's motion to remain free on bail pending appeal, subject to the terms and conditions already imposed upon the Defendant.

I

## INTRODUCTION

The Court begins its analysis by looking to the applicable statute, which was recently amended as part of the bail reform amendments to the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 18 U.S.C. § 3143(b), which provides:

> RELEASE OR DETENTION PENDING APPEAL BY THE DEFENDANT.—The judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for certiorari, be detained, unless the judicial officer finds—
>
> > (1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released pursuant to Section 3142(b) or (c); and
> >
> > (2) that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.
>
> If the judicial officer makes such findings, he shall order the release of a person in accordance with the provisions of Section 3142(b) or (c).

18 U.S.C. § 3143(b). The amended statute clearly sets forth a presumption that a defendant should not be allowed to go free on bail pending appeal unless he proves both that he is not likely to flee or pose a danger to the community *and* that his appeal raises a substantial question of law or fact likely to result in reversal or a new trial. The predecessor to Section 3143(b) provided only that Defendant not pose a danger to the community or be likely to flee, and that the appeal was not "frivolous" or taken for purposes of delay. The practical result of the prior standard was that very few defendants were denied bail pending appeal on the grounds that such an appeal was "frivolous." *See* 3A C. Wright, *Federal Practice and Procedure* § 767 (1982). The second requirement for release pending appeal, that the appeal raises a substantial question of law or fact,

represents a clear departure from the prior standard, and thus shall be considered first in the court's analysis.

## II

## SUBSTANTIAL QUESTION OF FACT OR LAW

### A. *History*

The procedural history surrounding the second prong of the test for bail pending appeal, whether the appeal presents a "substantial question of law or fact likely to result in reversal," should be helpful in analyzing the intent and scope of the recent bail amendments. Professor Wright succinctly sets forth the second element's history in his learned treatise on federal procedure:

> The first of the circumstances in which § 3148 [the predecessor to § 3143(b)] allows the court to have a defendant detained pending appeal is if it appears that the appeal is frivolous. This requirement had previously appeared in Criminal Rule 46(a)(2), as it stood from 1956 to 1972, and should receive the same construction under the statute as under the rule. When Rule 46(a)(2) was originally adopted in 1946 it had allowed bail pending appeal "only if it appears that the case involves a substantial question which should be determined by the appellate court." The Supreme Court, acting on its own rather than on a recommendation from the Advisory Committee on Criminal Rules, amended that in 1956 to provide for bail "unless it appears that the appeal is frivolous or taken for delay." The new standard was intended to liberalize the granting of release pending appeal, and it is this lighter standard that was taken without change into the 1966 statute [the Bail Reform Act of 1966].

3A C. Wright, *supra* at § 767 (fn.'s omitted).

This trend towards "liberalization" of the standard for allowing bail pending appeal was clearly checked by the bail reform amendments of the Comprehensive Crime Control Act of 1984. This Court must now determine how stringent a test Congress intended to impose upon a defendant seeking bail pending appeal by its recent amendment of the relevant section.

### B. *The Statutory Provision*

The issues in this case turn on the interpretation of the 1984 amendments to the Bail Reform Act, and in particular, the changes in the section pertaining to bail pending appeal. It is well established that the starting point in every case involving statutory construction is the language of the statute itself. If the statutory words are clear, there is neither need nor warrant to look elsewhere. *See American Trucking Associations, Inc. v. I.C.C.,* 659 F.2d 452, 458–9 (5th Cir.1981), *opinion clarified* (on other issues), 666 F.2d 167, *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1982). Section 3143(b)(2) requires the judicial officer to find "that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial." 18 U.S.C. § 3143(b)(2). A court should not depart from the official text of the statute and seek extrinsic aids to its meaning unless the language is not clear or the apparent clarity of language leads to absurdity of result when applied. *American Trucking Associations, Inc. v. I.C.C., supra* at 459. Despite the apparent clarity of Section 3143(b)(2), the Court finds that a strict and literal application of the statute would lead to denial of bond in every appeal, and therefore, the Court must look further to effectuate the intent of Congress in amending the provisions for bail pending appeal. In so doing, the Court recognizes the Supreme Court's admonition that a court may not "interpret a statute so narrowly as to defeat its obvious intent." *United States v. Braverman,* 373 U.S. 405, 408, 83 S.Ct. 1370, 1372, 10 L.Ed.2d 444 (1963).

If the sub-section is taken literally, the Court should never grant bond unless the Defendant raises a substantial question that is "likely to result in reversal;" in effect, the section compels the Court to

find that it has committed reversible error in the course of the trial in order to release a defendant pending appeal. If the Court finds that it committed reversible error, the proper course would be to grant a new trial or a judgment of acquittal rather than forcing the Defendant to appeal a conviction the Court knows is unjust. This inconsistency has been noted by the commentators, and has been the subject of much discussion by members of the federal judiciary. As one leading commentator has stated:

> If "likely" means "probable," there will be almost no cases in which a trial judge could find that an appeal was "likely to result in reversal or an order for a new trial" ... [but] [i]f "likely" means something less than "probable" (such as a substantial possibility), it becomes easier to find that an appeal is likely to result in reversal but harder to find that a defendant is not likely to flee or pose a danger.

A. Partridge, *The Crime Control and Fine Enforcement Acts of 1984: A Synopsis* at 27 (Federal Judicial Center 1985).

It is clear to this Court that if the words "likely to result in reversal" are taken literally, then this Court would be remiss in its duties under Rule 29(c) or Rule 33 of the Federal Rules of Criminal Procedure in not granting a motion for acquittal or directing a new trial. It would be an absurd result for the Court to grant an appeal under this standard while simultaneously denying a motion for a new trial or for judgment of acquittal. Accordingly, the Court must look beyond the words of the statute to ascertain the true intent of Congress in amending this provision.

## C. *Statutory Construction*

▪ Faced with this apparent ambiguity, the Court has the ultimate responsibility to determine any issues of statutory interpretation. *Sumlin v. Brown*, 420 F.Supp. 78, 82 (N.D.Fla.1976), *citing with approval, Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission*, 390 U.S. 261, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968). The presumption against interpreting a statute in a way which renders it ineffec-

tive is hornbook law and simply beyond peradventure. *See, e.g., General Motors Acceptance Corp. v. Whisnant*, 387 F.2d 774, 778 (5th Cir.1968). In seeking to construe this statute, the Court keeps in mind the basic axiom that "courts should construe all legislative enactments to give them some meaning...." *Rosado v. Wyman*, 397 U.S. 397, 415, 90 S.Ct. 1207, 1219, 25 L.Ed.2d 442 (1970).

In this case, if the Court construes "likely to result in reversal" to mean that it is more probable than not that the Court has committed reversible error, then a defendant would never be freed on bail pending appeal because the court should grant a new trial or judgment of acquittal. Thus, a literal interpretation of "likely to result in reversal" would result in the statute being a nullity: if the only cases where appeal is to be granted are those cases in which the Court should grant a new trial or a judgment of acquittal, then Section 3143(b) is not a standard for determining when bail should be granted on appeal, but is rather a directive that absent a new trial or judgment of acquittal, bail should not be granted. This interpretation conflicts with a common sense analysis of the statute.

While it is clear that Congress intended to revise the standard for bail pending appeal by setting a more stringent standard, the Court is convinced that Congress did not intend to cut off any right to bail pending appeal. The right to bail pending appeal prior to the recent amendments was not absolute, but defendants were virtually assured of bail absent the unlikely finding of danger to the community or likelihood of flight. *See* 3A C. Wright, *supra* at § 767. As the Supreme Court has stated:

> To read a substantial change in accepted practice into a revision of the Criminal Code without any support in the legislative history of that revision is insupportable.... "It will not be inferred that the legislature, in revising and consolidating the laws, intended to change their policy, unless such an intention be clearly expressed."

*Muniz v. Hoffman*, 422 U.S. 454, 470, 95 S.Ct. 2178, 2187, 45 L.Ed.2d 319 (1975), *quoting with approval, United States v. Rider*, 110 U.S. 729, 740, 4 S.Ct. 196, 201, 28 L.Ed. 308 (1884). In addition, the Court notes that Congress clearly showed by its other amendments to the Bail Reform Act that it was capable of expressly providing for detention without bail. *See, e.g.*, 18 U.S.C. § 3142(e). Thus, this Court is not convinced that Congress intended to effectively deny to all defendants bail pending appeal by its amendment to the provision at issue. Instead, the Court believes that Congress intended to apply a stricter standard for determining whether an appeal was meritorious enough to justify granting bail during its pendency.

### D. *Legislative History*

■ As Mr. Justice Story so eloquently stated "the proper course in all these cases is to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and presents in the fullest manner the apparent objects of the legislature." *United States v. Winn*, 3 Sumn. 209, 211, 28 Fed.Cas. No. 16, 740 (1838), *quoted with approval,* in *Hattaway v. United States*, 304 F.2d 5, 9–10 (5th Cir. 1962). It is well established that where a court finds a statute ambiguous, it should look to the legislative history of the statute to aid in ascertaining the congressional intent, *see Craig v. Finch*, 425 F.2d 1005, 1008 (5th Cir.1970), since the legislative history of a statute is the most fruitful source of instruction as to its proper interpretation. *See Graff Chevrolet Co. v. Campbell*, 343 F.2d 568, 571 (5th Cir.1965).

■ The Court finds several comments in the legislative history that are particularly significant in its analysis:

Although there is clearly no constitutional right to bail once a person has been convicted, 18 U.S.C. § 3148, as well as this section, statutorily permit release of a person while he is awaiting sentence or while he is appealing.... The basic distinction between the existing provision and [the new] section 3143 is one of

presumption.... [T]he current statute incorporates a presumption in favor of bail even after conviction. It is [this] presumption that the Committee wishes to eliminate in [the new] section 3143.

. . . .

. . . .

... Under the current 18 U.S.C. § 3148, release can be denied if it appears that the appeal is frivolous or taken for delay. The change in subsection (b) requires an affirmative finding that the chance of reversal is substantial. This gives recognition to the basic principle that a conviction is presumed to be correct.

. . . .

The Committee intends that in overcoming the presumption in favor of detention the burden of proof rests with the defendant.

S.Rep. No. 225, 98th Cong., 2d Sess. 26–27, *reprinted in* 1984 *U.S.Code Cong. & Ad. News* 1, 29–30 (cit.'s omitted).

The Court is aided in its analysis of the legislative history by the recent decision in *United States v. Chiattello*, 599 F.Supp. 970 (N.D.Ind.1985), where the court stated:

... It is clear from the language of the statute itself and the legislative history that a significantly different standard is now mandated in determining whether the presumption favoring post-conviction detention of a defendant has been overcome. The "likely to result in reversal" standard is clearly a much more stringent requirement with the burden now placed on a defendant. The emphasis is entirely changed from the prior standard which placed the burden on the government in establishing that an appeal was "frivolous."

Section 3143 of the new "Bail Reform Act of 1984" reflects the Congressional recognition of the basic principle that a conviction is presumed to be correct. In accordance with this basic principle a release of a defendant on appeal may be granted only if the chance for reversal is substantial and the defendant is not like-

ly to flee or pose a danger to the community.

*Id.*

This Court concurs with the *Chiattello* Court and finds that the Congressional intent in enacting the amendments to the Bail Reform Act was primarily to shift the burden of persuasion to the Defendant while stiffening the showing required. The Defendant is not required to show that the trial court will be reversed, but instead must show that the questions of fact or law raised are "substantial," and likely to result in reversal should the appellate court hold in defendant's favor. The exact standard for determining when a question of fact or law is "substantial" is not precisely defined by the Congress, as it appears that Congress intended to grant the trial court some discretion in determining when a defendant's appeal merits bail during its pendency. The Court finds that a "substantial question of law or fact" is a persuasive argument by the Defendant, solidly based upon the evidence and law adduced prior to and during trial, which if decided in defendant's favor by the appellate court, would be "likely to result in reversal or an order for a new trial."

The Court finds support for this finding from several sources. As the legislative history stated, the "basic distinction between the existing provision and Section 3143 is one of presumption." *See* S.Rep. No. 225, *supra,* at 29. Although the shift in the burden of proof may sometimes prevent a movant from prevailing on the merits, such a shift is not tantamount to an outright denial of a substantive right. The legislative history further provides that the "change in sub-section (b) requires an affirmative finding that the chance for reversal is *substantial.* This gives recognition to the basic principle that a conviction is *presumed* to be correct." *Id.* at 30 (emphasis supplied). The clear focus of the Congress is upon the substantiveness of the appeal and the presumption/burden of persuasion. The legislative history gives no further explanation and does not emphasize the "likely to result in reversal" lan-

guage. Thus, the Court finds that the Congressional intent in amending Section 3143(b) was to shift the burden of persuasion to the Defendant and to stiffen the requirements for bail by requiring a finding that substantial questions of law are raised.

The Court finds further support in the text of the statute itself. As Mr. Chief Justice Marshall noted:

It is undoubtedly a well-established principle in the exposition of statutes *that every part is to be considered,* and the intention of the legislature to be extracted from the whole. It is also true that where great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the legislature be plain ..."

*United States v. Fisher,* 6 U.S. (2 Cranch) 358, 2 L.Ed. 304, 313 (1804) (emphasis supplied). The Court notes that the title of the sub-section at issue reads "Release or Detention Pending Appeal." While the title of the section is not controlling, it does give some indication of the legislature's intent and the inclusion of the word "release" supports a finding that Congress intended release in some circumstances. As another Texas United States District Court stated, the "legislative history includes not only the committee reports and debates, but also the title or heading of an act or provision ... and in the case of an amendment, the mischief it was intended to eliminate...." *Herren v. United States,* 317 F.Supp. 1198, 1203 (S.D.Tex.1970), *aff'd,* 443 F.2d 1363 (5th Cir.1971); *see also House v. C.I.R.,* 453 F.2d 982, 987 (5th Cir.1972). After due consideration of all these sources, the Court is convinced that Congress intended that a defendant be released on bail pending appeal where the risk of flight or danger to the community are both unlikely, and where the defendant's appeal presents a substantial question of fact or law likely to result in reversal if the appellate court finds for the defendant.

E. *Defendant's Showing of a Substantial Question of Law or Fact*

At the sentencing hearing for Defendant Robert Lyle Lamp, Jr., Defendant's counsel

gave oral notice of appeal and stated several grounds to support that appeal. Those grounds are repeated in the Defendant's sworn affidavit and *pro se* motion for leave to proceed on appeal *in forma pauperis.* While it would be improper for the Court to assume the advocate's role and to support Defendant's appeal, the Court is of the opinion that at least two of the Defendant's issues on appeal present "substantial questions of law" which are "likely to result in reversal" if decided in Defendant's favor.

Defendant's first substantial issue concerns the Court's decision to grant the Government's motion *in limine* regarding the admissibility of evidence of illegal drug activities and income. The Court granted the Government's motion to present this "other crimes" evidence on two alternative grounds. The Court's first ground was that such evidence is not extrinsic under Rule 404(b) of the Federal Rules of Evidence where the act the Government seeks to admit and the evidence of the crime charged are inextricably intertwined. The Court found for the Government on this point while relying on *United States v. Carrillo,* 561 F.2d 1125 (5th Cir.1977). The Court notes, however, that its research revealed several cases in other Circuits contrary to the *Carillo* holding. *See, e.g., United States v. Horvath,* 731 F.2d 557 (8th Cir.1984). These conflicting holdings might support a finding that the Defendant raises a "substantial" question of law.

The second alternative ground for granting the Government's motion *in limine* was the Court's finding that the evidence would be admissible under the two-step "extrinsic offense" test of *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978) (*en banc*), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). The Rule 403 balancing test, which is part two of the *Beechum* test, was a very close decision in the instant case. Should the Fifth Circuit find that the Court incorrectly balanced the probative value of the evidence against its prejudicial effect, the appeals court would likely find reversible error. Accordingly, both alternative grounds relied upon by the Court in granting the Government's motion

*in limine* to allow evidence of other illegal activities raise "substantial" questions of law "likely to result in reversal" should the Fifth Circuit hold that this Court erred in its findings.

Defendant raises a second "substantial question of law" which is "likely to result in reversal" should the Fifth Circuit find that this Court's findings were in error. That issue involves the Court's finding of substantial independent evidence of the conspiracy alleged in count one of the indictment in the instant cause pursuant to *United States v. James,* 590 F.2d 575 (5th Cir.) (*en banc*), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836 (1979). *James* requires the Court to find that a conspiracy existed, that the co-conspirator and the Defendant against whom the statement is offered were members of that conspiracy, and that the statement was made during the course of and in furtherance of the conspiracy. *Id.* at 583. At the close of evidence, the Court determined that the predicate for admitting the hearsay statements of co-conspirator Lonnie Werning had been satisfied by a preponderance of the evidence independent of the hearsay statement itself. As Mr. Werning's testimony was pivotal in Defendant's conviction, a finding by the Fifth Circuit that the Court had failed to satisfy the *James* requirements would cast doubt on the validity of Defendant's conviction. Based on the foregoing analysis, the Court is of the opinion that the Defendant raises a "substantial question of law" on appeal by attacking the Court's ruling that portions of Mr. Werning's testimony were admissible under Rule 801(d)(2)(E) of the Federal Rules of Evidence and *United States v. James.*

### F. *Summary*

Section 3143(b)(2) requires the Court to find that "the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial." 18 U.S.C. § 3143. The Court has found that Defendant's appeal raises at least two such grounds: (1) whether the Court erred in granting the

Government's motion *in limine* to admit evidence of other illegal activities; and (2) whether the Court erred in admitting the hearsay statements of Lonnie Werning pursuant to *United States v. James* and Rule 801(d)(2)(E). The Court finds that Defendant's appeal is not for the purpose of delay and raises at least two "substantial questions of law" which are "likely to result in reversal or an order for a new trial" should the appellate court find in Defendant's favor. Defendant has therefore satisfied the second element of the Section 3143(b) test for release on bail pending appeal.

## III

## LIKELIHOOD OF FLIGHT AND DANGER TO THE COMMUNITY

### A. *Procedural History*

Section 3143(b)(1) requires the judicial officer to find "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any person or the community if released." This standard is the same standard required by Section 3143(a) for release of a defendant pending sentence. The Court ordered the Defendant released pending sentencing pursuant to Section 3143(a) on January 2, 1985. Although Defendant's situation has changed with the imposition of a substantial prison term, the Court believes that the finding that the Defendant proved by clear and convincing evidence that he was not likely to flee or pose a danger to any other person or the community if released remains unchanged. The Court's determination is based upon the evidence adduced at trial, the Court's observations during trial and at sentencing, the Court's discussions with the Defendant during the sentencing hearing, as well as the proceedings before the Magistrate on December 28, 1984 (relating to the Government's motion to revoke the Defendant's bond prior to sentencing).

### B. *The Statutory Provision*

Section 3143(b)(1) requires the Court to find by clear and convincing evidence both that (i) the Defendant is not likely to flee the jurisdiction if permitted to remain on bond; and (ii) that the Defendant will not pose a danger to the safety of any other person or the community if released on bond pending appeal. These two factors embody several more specific concerns. These concerns have been enumerated by the Court of Appeals for the District of Columbia in the leading case of *United States v. Stanley,* 152 U.S.App.D.C. 170, 469 F.2d 576 (1972), *cited with approval, United States v. Miranda,* 442 F.Supp. 786, 789 (N.D.Fla.1977), *rev'd on other grounds,* 593 F.2d 590 (5th Cir.1979).

█ The nine specific concerns listed by the *Stanley* Court for determining whether a defendant is likely to flee or pose a danger are as follows:

(1) The nature and circumstances of the offense;

(2) The weight of the evidence against the accused;

(3) The defendant's family ties;

(4) The defendant's employment status;

(5) The defendant's financial resources;

(6) The defendant's character and mental condition;

(7) The length of defendant's residence in the community;

(8) Any prior criminal record; and

(9) Any flight or failures to appear in court proceedings prior to or during the time of trial.

*United States v. Stanley, supra,* 469 F.2d at 580 n. 14. Those factors are substantially the same as those set forth in the new bail provisions. *See* 18 U.S.C. § 3142(g). The Court will consider each of these concerns in determining whether the Defendant is likely to flee or pose a danger to the community.

### C. *Analysis*

1. *Nature and Circumstances of the Offense*

The Defendant was convicted on one count of conspiracy to defraud the United

States, two counts of attempted tax evasion, and two counts of aiding and abetting false declarations. In addition, the evidence showed that the source of the income which led to the tax evasion was the sale of substantial quantities of methamphetamine, a separate crime not charged against the Defendant. The Court further notes that the conspiracy and evasion took place over five years, and evidences the continuing disrespect of the Defendant for the legal process. Although the activities from which the Defendant derived his illegal income often involve violence, the Court notes that there was no evidence to show that Defendant employed violence in the course of his sale of methamphetamine. Despite the non-violent nature of the charges against the Defendant, the Court finds that this factor weighs against Defendant's release.

### 2. *Weight of the Evidence Against Accused*

The evidence against the Defendant in the instant case was substantial. The Government's case lasted well over three weeks and involved both "inside testimony" and considerable circumstantial evidence that supports Defendant's conviction. The Court believes that the evidence presented against the Defendant at trial weighs strongly against the Defendant, and militates against a release on bail pending appeal.

### 3. *Family Ties*

This factor weighs strongly in Defendant's favor. The Court notes that Defendant's mother has obviously supported her son throughout the trial, both by her attendance and her discussions with Defendant's counsel. The pre-sentence report further reflects that the Defendant's mother confirmed that the Defendant assumed a large role in helping to raise her younger children. The Court finds that Defendant has strong and supportive family ties. Defendant's siblings also appear to support the Defendant. In addition, the Court finds that the Defendant has provided a great deal of the assistance to the family unit, both financially and otherwise, and that the family looks to him for continued contribution. Accordingly, the Court finds that this factor militates strongly in favor of Defendant's release on bail pending appeal.

### 4. *Employment Status*

The Defendant testified at the hearing on the Government's motion to revoke bond prior to sentencing that he had worked from June, 1984, until the jury verdict in December, 1984, for his brother-in-law, Fred Brietzke, doing home remodeling and cutting cord wood. Prior to that time, the Defendant claims that he was self-employed and involved in custom vehicle painting and bodywork. While the Court accepts Defendant's testimony that he has been employed by his brother-in-law, the evidence at trial showed that Defendant's primary occupation prior to the IRS investigation was the sale of methamphetamine, and not auto work. The Court believes, however, that the Defendant is unlikely to be involved in any further drug trafficking, and his current financial situation, combined with the needs of his family, compel him to resume work for his brother-in-law pending his appeal. While Defendant's current employment status is not a factor of great weight in this Court's balancing process, it does weigh slightly in Defendant's favor.

### 5. *Financial Resources*

According to the Defendant's motion for leave to file an appeal *in forma pauperis*, Defendant has virtually no assets. This factor cuts both ways in this Court's consideration. If the Court accepts as true Defendant's representation as to his financial situation, then Defendant has nothing to lose *financially* by fleeing the jurisdiction, and this would weigh against release on appeal pending bond. At the same time, however, a dearth of liquid assets would hinder a defendant who wished to successfully flee the jurisdiction. After due consideration of this factor, the Court is of the

opinion that it does not weigh either for or against the Defendant's case for bail pending appeal.

### 6. *Character and Mental Condition*

Defendant's character and mental condition have frequently been brought into question during the course of a trial and sentencing in this case. The Court finds that Defendant is "highly excitable," but is not incompetent or dangerous because of any mental deficiency. The Court notes that despite the obvious pressures brought to bear by the IRS investigation, trial, and sentencing, the Defendant has maintained some semblance of control over his personal life. On the other hand, Defendant's behavior during trial convinces this Court that Defendant is subject to the exercise of poor judgment. Defendant's character must also be questioned in light of strong evidence of tax evasion, perjury, and narcotics trafficking. After due consideration of this factor, the Court is of the opinion that it weighs against release of Defendant on bond.

### 7. *Length of Residence in Community*

This factor weighs very strongly in Defendant's favor. A San Antonio native, the Defendant has been away from home only one year since his birth in 1954. That year was spent in the United States Army, and much of that time was apparently spent in San Antonio. Defendant's entire life has been spent in the same neighborhood, and should the Defendant choose to flee, he would leave behind his entire family, friends, and any chance of a normal existence. The Government did not provide any evidence at the hearing on the Government's motion to revoke bond pending sentencing that would contradict the Court's conclusion that Defendant's entire life is centered in San Antonio, Texas. Thus, the factor of residence in the community weighs strongly in Defendant's favor.

### 8. *Criminal Record*

While Defendant's criminal record is not spotless, it is far less extensive than many of the defendants that come before this Court for sentencing. The Defendant has been charged in four prior situations. Two of the charges were no-billed by the Grand Jury, and accordingly, do not concern the Court. A third charge of theft was dismissed subsequent to indictment. Defendant's sole prior conviction was for the sale of methamphetamine to an undercover narcotics officer in May 1978. Defendant received a suspended five year sentence for the offense and five year's probation was imposed. Defendant successfully completed this probation after two and one-half years.

It should be noted, however, that the instant offense charged the Defendant with evasion of federal taxes on the income from the very same illegal drug sales that led to his state conviction. Defendant's sole criminal conviction thus arose out of the methamphetamine trafficking that led to the instant tax evasion charges. The Defendant has never been convicted of a violent offense, which militates against a finding of danger to any person or the community. After due consideration of this factor, the Court is of the opinion that it weighs in favor of release of the Defendant during the pendency of his appeal.

### 9. *Flight*

The Court finds that this factor weighs strongly in Defendant's favor. Although the Defendant has been aware of a pending investigation for over three years, he has made no attempt to flee. The Court is quite aware of the proximity of the Mexican border and the availability of refuge for persons with financial resources. Despite this, Defendant remained in San Antonio during the lengthy investigation, Grand Jury proceedings, trial, and the pre-sentencing period. During this entire time, Defendant has failed to report to Pre-trial Services on only four occasions, once in August 1984, twice in November 1984, and once in December 1984.

In addition, Defendant's counsel informed this Court at the sentencing that the Defendant is required to report daily to

his bail bondsman as a condition of his surety. Defendant's counsel reported that Defendant has not failed to make his required daily appearance. The Court further notes that should the Defendant flee the jurisdiction, he would have to abandon his mentally retarded brother and sickly mother, both of whom depend upon him for support. After due consideration of the evidence and risk of flight, the Court is of the opinion that this factor weighs strongly in favor of allowing the Defendant to remain on bond pending appeal.

### D. *Summary*

 Admission to bail after conviction and pending appeal is within the sound discretion of the Court. *See United States v. Parr*, 399 F.Supp. 883, 887 (W.D.Tex. 1975). The Court must look at the totality of the circumstances surrounding the Defendant's entire situation to arrive at what must be considered an educated guess as to Defendant's future behavior. After due consideration of all the above factors, this Court is of the opinion that Defendant has proven by clear and convincing evidence that he is not likely to flee the jurisdiction nor pose a danger to any person or the community during the pendency of his appeal of his conviction. Accordingly, the Court is of the opinion that the Defendant has satisfied the first element of the Section 3143(b) requirement for release pending appeal.

## IV

## CONCLUSION

The primacy of the concept of Liberty in American jurisprudence cannot be doubted. The Declaration of Independence refers to the "unalienable Rights" of man, including "Life, Liberty and the pursuit of Happiness." The primary concern of due process in the criminal system is that no man be deprived of his liberty unless he is found guilty beyond a reasonable doubt in a trial unmarked by fundamental flaws in fairness. A trial court cannot guarantee that a defendant's due process rights will never be violated, although they are ever watch-

ful to protect such rights. Despite a trial court's good faith attempts to provide fundamental fairness, appeals courts are often compelled to grant a defendant's appeal and order a new trial. A conviction in a trial court thus cannot be considered absolutely final under the present system prior to the exhaustion of a defendant's direct appeals.

Within this framework the Court must consider the rights of a defendant to bail pending appeal. Although the right to bail is not absolute, it should be denied only in the most compelling circumstances so that a man should never be deprived of his liberty prior to receiving his right to a fair trial. The Defendant in the instant case has received such a trial, and has been found guilty beyond a reasonable doubt. The defendant is not without recourse, however, as he may appeal his conviction on the grounds that the court's error deprived him of due process and the right to a fair trial. In recognition of this fact, Congress has seen fit to accord a worthy defendant an opportunity to remain free on bond during the pendency of such an appeal.

Section 3143(b) of the Bail Reform Act of 1984 provides that a defendant shall be ordered detained unless the judicial officer finds by clear and convincing evidence that defendant is not likely to flee or pose a danger, and that the appeal is not for purposes of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial. This is not an easy burden, and the legislative history of the act makes it clear that the burden is on the defendant to prove all of these things prior to his release on bail pending appeal. After due consideration of the applicable law and facts before it, this Court is of the opinion that the Defendant has met his burden and should be released on bail pending appeal. Therefore,

IT IS HEREBY ORDERED that Defendant's Oral Motion for release pending appeal be and is hereby GRANTED.

IT IS FURTHER ORDERED that Defendant shall be required to comply with each and every condition set forth by this Court in its January 2, 1985, order setting forth his terms and conditions of bond.

IT IS FURTHER ORDERED that should the United States Court of Appeals for the Fifth Circuit deny Defendant's appeal, Defendant shall report to the designated institution or the U.S. Marshal, San Antonio, Texas, within ninety-six (96) hours of the issuance of mandate.