COMMONWEALTH vs. NORMAN GAGNON
(and two companion cases[1]).*

Essex. September 15, 1982. — November 4, 1982.

Present: LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Due Process of Law*, Vagueness of statute. *Statute*, Construction. *Practice, Criminal*, Sentence.

The second sentence of G. L. c. 94C, § 32 (*a*), which requires a "mandatory minimum" term of imprisonment for the unlawful distribution of a class A controlled substance, is so inconsistent with the optional language of the first sentence, which allows punishment for the offense by imprisonment, fine, or both, as to make § 32 (*a*) unconstitutionally vague. [569-574]

INDICTMENTS found and returned in the Superior Court Department, one on February 18, 1981, and two on March 9, 1981.

Motions to dismiss were heard by *Brady*, J., and the cases were tried before *Flaksman*, J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Jerome A. Segal* for the defendant Philip C. Chouinard (*Bruce Miller* for the defendant Norman Gagnon, with him).

*Dyanne Klein Polatin*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. The single issue in this case is the constitutionality of G. L. c. 94C, § 32 (*a*). We hold that it is unconstitutional.

---

[1] One is against Norman Gagnon; the other is against Philip C. Chouinard.

* See opinion on petition for rehearing, *post* 768 (1982). — REPORTER.

In February and March, 1981, an Essex County grand jury returned two indictments against Norman Gagnon and one against Philip C. Chouinard for the unlawful distribution of heroin in violation of § 32 (a) of G. L. c. 94C, the Controlled Substances Act. In May, 1981, the defendants moved to dismiss the indictments on the ground that § 32 (a) "is unconstitutionally vague and ambiguous in that its penalty clause comprehends two inconsistent penalty schemes and is therefore void." The motions were denied on August 3, 1981, following a hearing held on July 29, 1981. The defendants thereafter were convicted as charged, following jury-waived trials on November 23, 1981. Chouinard was sentenced to a ten-year term at the Massachusetts Correctional Institution at Concord and fined $500. Gagnon was sentenced to two concurrent terms of ten years at M.C.I. Concord and fined $500 on each indictment. The only issue raised by the defendants on appeal is the denial of their motions to dismiss. Their motions should have been allowed.

General Laws c. 94C, § 32 (a), as appearing in St. 1980, c. 436, § 4, provides: "Any person who knowingly or intentionally manufactures, distributes, dispenses, or possesses with intent to manufacture, distribute or dispense a controlled substance in Class A of section thirty-one shall be punished by a term of imprisonment in the state prison for not less than one year and not more than ten years, or by a fine of not less than $1,000 and not more than $10,000, or both. Any person convicted of violating this subdivision shall be punished by a mandatory minimum one year term of imprisonment." The defendants contend that the second sentence, requiring a "mandatory minimum" term of imprisonment, is so inconsistent with the optional language of the first sentence, which allows punishment by imprisonment, fine, or both, as to make the statute unresolvably ambiguous. The Commonwealth does not dispute the apparent inconsistency, but it argues that a reasonable interpretation of the penalty provisions "in light of their legislative history, the legislature's intent, and the practical meaning of the statute when viewed as a whole and along with related Controlled

Substances Act statutes, readily establishes the statute's validity."

"It is a fundamental tenet of due process that '[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.'" *United States* v. *Batchelder*, 442 U.S. 114, 123 (1979), quoting *Lanzetta* v. *New Jersey*, 306 U.S. 451, 453 (1939). This principle applies to sentencing as well as substantive provisions. *United States* v. *Batchelder, supra. United States* v. *Evans*, 333 U.S. 483 (1948). We are required by ordinary rules of statutory construction to construe any criminal statute strictly against the Commonwealth. *Commonwealth* v. *Clinton*, 374 Mass. 719, 721 (1978). *Commonwealth* v. *Devlin*, 366 Mass. 132, 137-138 (1974). However, we recognize that "this maxim is a guide for resolving ambiguity, rather than a rigid requirement that we interpret each statute in the manner most favorable to defendants." *Simon* v. *Solomon*, 385 Mass. 91, 102-103 (1982). We may look to outside sources to determine the meaning of a statute whose language is unclear. *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 264 (1982), cert. denied, 459 U.S. 864 (1982). Our purpose is to determine the Legislature's intent so that we may give effect to it in our construction of the statute. See *Commonwealth* v. *Chretien*, 383 Mass. 123, 131-132 (1981). While we shall indulge every rational presumption in favor of the statute's validity, *Commonwealth* v. *Lammi*, 386 Mass. 299, 301 (1982), any reasonable doubt as to the meaning of the statute or the intention of the Legislature which lingers after an investigation of outside sources must be resolved in favor of the defendants. See *Aldoupolis* v. *Commonwealth, supra* at 267. See also 3 C. Sands, Sutherland Statutory Construction § 59.04, at 13 (4th ed. 1974). Since it is conceded that the penalty provisions of § 32 (*a*) are facially inconsistent, we shall examine the statutory history and context of the section to see whether this inconsistency can be resolved in light of any legislative intention there expressed.

General Laws c. 94C, the Controlled Substances Act (Act), was enacted in 1971. St. 1971, c. 1071, § 1. It repealed the various sections of G. L. c. 94 which, until then, had regulated the manufacture and distribution of drugs. St. 1971, c. 1071, § 2. Prior to 1971, a judge could suspend the imposition of the sentence of a person convicted on first offense for illegally selling or distributing narcotics, but he could not suspend sentence for those convicted of a second or subsequent offense. G. L. c. 94, §§ 212A, 217, 217E, repealed by St. 1971, c. 1071, § 2.

General Laws c. 94C, § 32, as originally enacted, provided that a person convicted of a first offense involving a class A or B controlled substance "shall be punished by imprisonment in the state prison for not more than ten years or in a jail or house of correction for not more than two and one half years or by a fine of not more than twenty thousand dollars, or both such fine and imprisonment." Those previously convicted of a felony under the Act or corresponding prior law were subject to punishment by longer State prison terms plus a fine. The language contained in the prior law prohibiting suspension of sentences for second offenses was not included in the Act. However, since a second offense was punishable by a prison term plus a fine, G. L. c. 279, § 1A, prohibited suspension. See note 5, *infra*.

Amendments to the Act in 1980 (St. 1980, c. 436, § 4) replaced former § 32 with present §§ 32 through 32 H, each dealing with specific classes of drugs. Subsection (*b*) of the present § 32 deals with those previously convicted of the same offense or related offenses in other jurisdictions and provides that they shall "be punished by a term of imprisonment in the state prison for not less than five years and not more than fifteen years. Any person convicted of violating this subdivision shall be punished by a mandatory minimum term of imprisonment of five years in the state prison. A fine of not less than $2,500 and not more than $25,000 may also be imposed, but not in lieu of the mandatory term of imprisonment, as authorized herein."

General Laws c. 94C, § 32H, provides that a sentence imposed under § 32 (*b*), and certain other sections of the Act,[2] shall not be "suspended, reduced, or a term of probation served until the defendant shall have served the mandatory term of imprisonment as authorized in said sections." This provision was new in the 1980 amendments although it echoed earlier provisions in the pre-1971 drug laws.

From this history, the Commonwealth concludes that the Legislature clearly intended to distinguish between first and subsequent offenders and to allow suspended sentences for the former.[3] The Commonwealth therefore asks us to read § 32 (*a*), in apparent concordance with this intent, as to allow punishment by imprisonment, or fine, or both, and as to provide that no term of imprisonment imposed should be for less than one year although execution could be suspended. It finds particular support for this reading from the facts that the Legislature did not include in § 32 (*a*) any provision that would preclude either the imposition of a fine in lieu of imprisonment as it had in §§ 32 (*b*), 32A (*b*), 32B (*b*), 32D, 32E, and 32F, and did not include § 32 (*a*) within § 32H.

We think that such a reading takes insufficient account of what the Legislature did by inclusion of the "mandatory minimum" provision, for the punishment scheme suggested by the Commonwealth would have been in effect without it. The Legislature must be presumed to have been aware

---

[2] The other sections are 32A (*b*), 32B (*b*), 32D, 32E or 32F.

[3] The Commonwealth also points out that a proposed bill, 1982 Senate Doc. No. 1963, would retain the penalty distinctions between first and subsequent offenders.

of the reach of G. L. c. 279, §§ 1[4] & 1A,[5] when it amended § 32. See *Aldoupolis* v. *Commonwealth, supra* at 266; *Commonwealth* v. *King,* 202 Mass. 379, 388 (1909). By inclusion of the "mandatory minimum" provision in G. L. c. 94C, § 32 (*a*), the Legislature might well have intended at least four possible penalty schemes, each of which would be more or less consistent with its evident purpose to treat first offenders more leniently than repeat offenders: (1) at least a one-year sentence with suspension possible; (2) at least a one-year sentence with suspension impossible although payment of any fine imposed could be suspended if not prohibited under G. L. c. 279, § 1A; (3) a fine alone, or imprisonment for at least a year, or both, with suspension possible as to each unless otherwise prohibited; (4) a fine alone, or imprisonment for at least one year, or both, with only the fine suspendible unless otherwise prohibited. Viewed in this light, the statutory history is inconclusive.

As an additional basis for our decision, we note that § 32 (*a*) apparently would allow a sentence to State prison for a

---

[4] General Laws c. 279, § 1, as amended through St. 1975, c. 347, provides in pertinent part: "When a person convicted before a court is sentenced to imprisonment, the court may direct that the execution of the sentence, or any part thereof, be suspended and that he be placed on probation for such time and on such terms and conditions as it shall fix. When a person so convicted is sentenced to pay a fine and to stand committed until it is paid, the court may direct that the execution of the sentence, or any part thereof, be suspended for such time as it shall fix and in its discretion that he be placed on probation on condition that he pay the fine within such time. . . . The provisions of this section shall not permit the suspension of the execution of the sentence of a person convicted of a crime punishable by death or imprisonment for life."

[5] General Laws c. 279, § 1A, as amended through St. 1978, c. 478, § 309, provides in pertinent part: "When a person convicted before a court is sentenced to fine and imprisonment, the court may direct that the execution of the sentence, or any part thereof, be suspended, and that he be placed on probation for such time and on such terms and conditions as it shall fix. . . . This section shall not permit the suspension of the execution of the sentence of any person convicted of a crime punishable by imprisonment for life or of a crime an element of which is being armed with a dangerous weapon, or of any person convicted of any other felony if it shall appear that he has been previously convicted of any felony."

minimum, indeed a maximum, term of less than two and one-half years. General Laws c. 279, § 24, however, provides that the minimum term of a State prison sentence "shall not be less than two and one half years." Since a felony is defined as "[a] crime punishable by death or imprisonment in the state prison," with all other crimes being misdemeanors, G. L. c. 274, § 1, it would appear that § 32 (a) is intended to be a felony provision. However, a person convicted under § 32 (a) and sentenced to less than two and one-half years would thereby stand convicted of a felony for which he could not be sent to State prison. Compare *Sheriff of Middlesex County* v. *Commissioner of Correction*, 383 Mass. 631 (1981) (absent special circumstances, judge who sentences defendant to a term of more than two and one-half years may not order him held in custody of county sheriff without sheriff's consent). We need not decide whether the conflict between G. L. c. 279, § 24, and G. L. c. 94C, § 32 (a), can be resolved.[6] But add to this confusion the ambiguity of the "mandatory minimum" provision, and it is clear to us that this statutory maze provides no notice as to the potential penalties for violation of § 32 (a). The statutory context of § 32 (a) here only serves to exacerbate that subsection's inherent ambiguities.

We must give effect to all the language in a statute. *Town Crier, Inc.* v. *Chief of Police of Weston*, 361 Mass. 682, 687-688 (1972). Should we accept the construction urged by the Commonwealth, we would be left with a two-sentence subsection whose second sentence would be contrary to the otherwise clear meaning of the first sentence. The Commonwealth's reading would not require us to interpret ambiguous language to make the statute clear but to ignore that language which makes the statute unclear.

What was said in *United States* v. *Evans*, 333 U.S. 483, 495 (1948), is pertinent here. "If there were less inconsistency among the tentative possibilities put forward or greater

---

[6] Proposed legislation contained in 1982 Senate Doc. No. 1963 attempts to eliminate this problem by restoring the provisions allowing sentences to a jail or house of correction which were removed in the 1980 amendments.

consistency with the section's wording implicit in one, resolution of the difficulty by judicial action would involve a less wide departure from the common function of judicial interpretation of statutes than is actually required by this case. But here the task is too large."

There is reasonable doubt about the meaning of G. L. c. 94C, § 32 (*a*), and the Legislature's intention in passing it. Although we recognize the Legislature's efforts to devise realistic and effective sanctions against illicit drug trafficking, we cannot resolve this doubt in its favor. See *Aldoupoulis* v. *Commonwealth, supra* at 267. See also 3 C. Sands, *supra.* General Laws c. 94C, § 32 (*a*), is void for vagueness. The judgments are reversed and the findings set aside. The case is remanded to the Superior Court and the judge is to enter an order granting the defendants' motions to dismiss.

*So ordered.*