UNITED STATES of America

v.

Diego RESTREPO, et al.

Crim. A. No. 86–391–MA.

United States District Court,
D. Massachusetts.

April 3, 1987.

---

Roxana Marchosky, Robert J. Wheeler Jr., Boston, Mass., for Maria Marquez.

John C. McBride, Boston, Mass., for Jorge Restrepo.

Susan Crockin, Federal Defender's Office, Boston, Mass., for Hector Isaza.

Ignatius R. Piscitello, Lawrence, Mass., for Diego Restrepo.

Jonathan Chiel, William Kettlewell, U.S. Attys., for U.S.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

Eleven persons have been indicted and charged with, among other things, violations of 21 U.S.C. § 841, as amended by the Anti–Drug Abuse Act of 1986 ("Act"). The charges include conspiracy and possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a). The penalties for such violations are provided by 21 U.S.C. § 841(b)(1), as amended by the 1986 Act.

Four of the defendants, Jorge Restrepo, Maria Marquez, Diego Restrepo, and Hector Isaza, have now moved to dismiss all or some of the counts of the indictment on the ground that the Act's penalty clause is unconstitutional. Although Isaza is named in five of the thirteen counts, he moves to dismiss only two counts (one and nine), which are fashioned to trigger the allegedly unconstitutional penalty scheme of Section 841(b)(1) involving quantities of cocaine of at least 500 grams.[1] In contrast, the joint motion filed by Jorge and Diego Restrepo and Marquez does not specify if it seeks the dismissal of only some or all of the counts against them. As the joint motion addresses only the constitutionality of the sentencing provisions of Section 841(b)(1), I will consider their joint motion as pertaining to only those counts which could trigger the challenged sentencing provisions (counts one and five).

Another defendant, Charles Yarid, moves to dismiss on an entirely separate constitutional ground. He claims that count one of the indictment violates the prohibition against *ex post facto* laws, and asks for dismissal of the relevant portion of that count.

The Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, was signed by President Reagan on October 27, 1986. Subtitle A of the Act, entitled the Narcotics Penalties and Enforcement Act of 1986, is at the heart of the defendants' challenge to the indictment. Section 1002 of that subtitle amends 21 U.S.C. § 841(b) by creating substantial penalties for violations of 21 U.S.C. § 841(a).

The particular penalty at issue in this case is that found in Section 841(b)(1)(B), which sets forth the sentences for convictions involving 500 grams or more of a mixture involving cocaine. Such defendants

> shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years and if death

---

**1.** After the defendants' motions and memoranda were filed, a superseding indictment was returned by the grand jury. All references will be to the counts in the superseding indictment.

or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of title 18, United States Code, or $2,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both.

21 U.S.C. § 841(b)(1)(B).[2]

The Act further provides:

Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

*Id.*

The defendants challenge the constitutionality of this penalty scheme on several grounds. They claim that it violates the due process and equal protection principles of the fifth amendment because the penalty provisions are inconsistent and focus on the quantity, rather than the purity, of the substance involved. Defendant Isaza also attacks the validity of the statute on eighth amendment grounds, charging that the minimum mandatory penalties violate the cruel and unusual punishment prohibition. Defendant Yarid claims that the portion of the indictment fashioned to trigger the penalty provisions violates the prohibition against *ex post facto* laws. I consider each of these challenges separately.

### I. *Due Process Claims*

### A. *Inconsistent Penalty Scheme*

■ Isaza argues that the statute as amended contains conflicting penalty provisions and thus fails to give potential offenders notice sufficient to meet due process requirements. He claims that the

second portion of the statute, which strips the court of the power to suspend a sentence, indicates that a term of im-

prisonment is contemplated for every offender. Thus, it is fundamentally inconsistent with the prior cited provision, which allows punishment by imprisonment, fine *or both*. Plainly, the language "or both" contemplates that the sentencing court retains the option of simply imposing a fine.

Brief for Defendant Isaza at 3. The three defendants presenting the joint motion to dismiss also press that argument and further assert that the statute's ambiguity will lead to the imposition of penalties in an arbitrary and capricious manner. They urge the Court to find the statute's penalty provisions unconstitutionally vague and overbroad.

The government concedes in its memorandum in opposition to the motions to dismiss that the statute possibly "contains a minor error in syntax." However, it asserts that the disputed language is "simply one instance of inartful drafting in a very long, and complex, piece of legislation." Government's Brief at 2, 3. It claims that the abundant statutory language and legislative history leave no doubt that those convicted under Section 841(a) face mandatory prison terms, so there is no irreconcilable conflict within the statute.

Because these provisions were enacted so recently, and I have not discovered any cases construing the constitutionality of the amendments, the defendants' challenges require a detailed analysis.

A criminal statute does not satisfy due process notice requirements if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 2203, 60 L.Ed. 2d 755 (1979) (quoting *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954)). In a similar fashion, "vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the conse-

---

**2.** Section 841(b)(1)(A), which designates the penalties for those convicted of violations involving at least five kilograms of a mixture containing cocaine, similarly provides for a sen-

tence of "a term of imprisonment which may not be less than 10 years or more than life ... a fine ... or both."

quences of violating a given criminal statute." *Batchelder*, 442 U.S. at 123, 99 S.Ct. at 2204.

■ A criminal statute is to be strictly construed against the government, *see United States v. Bass*, 404 U.S. 336, 347–48, 92 S.Ct. 515, 522–23, 30 L.Ed.2d 488 (1971), and I am to apply the "rule of lenity" where there is statutory ambiguity. *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). However, I must not construe the criminal statute so strictly as to defeat the obvious intention of the legislature. *Barrett v. United States*, 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976). Nor may I manufacture ambiguity to invoke the rule of lenity so as to defeat that intent. *Bifulco*, 447 U.S. at 387, 100 S.Ct. at 2252. In interpreting the penalty section of a federal criminal statute, I may discern Congress' intent by looking to the language and structure, legislative history, and motivating policies of the statute in question. *Id.* I now undertake that examination to determine whether the language of the statute is hopelessly inconsistent and void or merely inartfully drafted and clear enough to pass constitutional muster.

1. *Statutory Construction*

■ In seeking to construe this statute, I keep in mind the basic axiom that "courts should construe all legislative enactments to give them some meaning," rather than to render them ineffective. *United States v. Lamp*, 606 F.Supp. 193, 196 (W.D.Tex. 1985) (quoting *Rosado v. Wyman*, 397 U.S. 397, 415, 90 S.Ct. 1207, 1219, 25 L.Ed.2d 442 (1970)). As Mr. Chief Justice Marshall noted:

It is undoubtedly a well-established principle in the exposition of statutes, *that every part is to be considered,* and the intention of the legislature to be extracted from the whole. It is also true, that where great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the legislature be plain....

*United States v. Fisher*, 6 U.S. (2 Cranch) 358, 386, 2 L.Ed. 304 (1805), *quoted in*

*United States v. Lamp*, 606 F.Supp. at 198 (emphasis added). Yet I am also mindful that where there is true inconsistency among the tentative possibilities put forward, and there is no greater consistency with the section's wording implicit in one of the interpretations, then the statute is void for vagueness. *See United States v. Evans*, 333 U.S. 483, 495, 68 S.Ct. 634, 640, 92 L.Ed. 823 (1948).

The language in Section 841(b)(1)(B) which imposes a sentence of "a term of imprisonment ... a fine ... or both" does indeed imply that a court could consider a prison term or a fine to be alternatives. The defendants claim that the language found at the end of that subparagraph is fundamentally inconsistent with the description of possible sentences:

Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

■ Read fairly, this language indicates that Congress intended that every person sentenced under this subparagraph would have to serve a mandatory prison term. The suggestion thus arises that the words "or both" have a meaning different from that which would have been ascribed to them had the sentence in which they appear stood alone. The words "such person shall be sentenced to a term of imprisonment ... a fine ... or both," when read in conjunction with the last two sentences of the subparagraph, describe the possible sentences as either a mandatory prison term or both a mandatory prison term and fine. This interpretation is supported by yet another sentence in Section 841(b)(1)(B), which provides that *"[a]ny sentence* imposed under this subparagraph shall ... include a term of supervised release ... *in addition to such term of imprisonment....*" (emphasis added). This provision thus also envisions that "any sentence imposed" will result in a prison term. Moreover, Subtitle C of the Act, entitled

the Juvenile Drug Trafficking Act of 1986, contemplates the provision of mandatory prison terms under Section 1003(a) of the Narcotics Penalties and Enforcement Act:

> An individual convicted under this section of an offense for which a mandatory minimum term of imprisonment is applicable shall not be eligible for parole under section 4202 of title 18, United States Code, until the individual has served the *mandatory term of imprisonment* required by section 401(b) [21 U.S.C. § 841(b)] as enhanced by this section.

Pub.L. No. 99–570, § 1102 (Oct. 27, 1986) (emphasis added).

While the "term of imprisonment ... a fine ... or both" language of Section 841(b)(1)(B) is ambiguous at first blush as to whether prison terms are mandatory, an examination of the other provisions of the statute indicate that Congress indeed intended that the sentences imposed would include mandatory imprisonment.

### 2. *Legislative History and Motivating Policies*

The Anti–Drug Abuse Act, as finally enacted, emerged from a bill in the House of Representatives, H.R. 5484. The original penalties section considered by the House Committee on the Judiciary did not envision mandatory prison terms. Like the provision which has been enacted, the original sentencing provisions provided for "a term of imprisonment ... a fine ... or both." However, the original version further stated that "[a]ny sentence *imposing a term of imprisonment* under this subparagraph shall ... impose a special parole term...." H.R.Rep. No. 845, 99th Cong., 2d Sess., pt. 1, at 2 (1986) (emphasis added). This phrase clearly indicates that not all sentences would include a term of imprisonment.

The House version of the Act was amended by the Senate, which struck all of the House's language after the enacting clause and inserted the text of its own anti-drug bill, S. 2878. *See* 132 Cong.Rec. S13,779 (daily ed. Sept. 26, 1986). The penalties section of S. 2878 is essentially identical to the language which was eventually enacted in all relevant respects:

> [In the case of a violation involving 500 grams or more of a substance containing cocaine] such person shall be sentenced to a term of imprisonment ... a fine ... or both.... Any sentence imposed under this subparagraph shall, in the absence of such a prior conviction, include a special parole term ... in addition to such term of imprisonment.... Notwithstanding any other provision of law, the court shall not place on probation of [sic] suspend the sentence of any person sentenced under this subparagraph nor shall the term of imprisonment imposed under this subparagraph run concurrently with any other term of imprisonment under this subparagraph or under any other provision of law. No person sentenced under this subparagraph shall be eligible for parole during their term of imprisonment.

132 Cong.Rec. S13,650 (daily ed. Sept. 25, 1986).

An examination of the debate in the Senate about its anti-drug bill reveals that the Senators understood that the bill would impose mandatory prison sentences on major drug offenders. Senator Byrd, who at the time was Senate Minority Leader, commented extensively on the penalty provisions of the bill:

> [W]e have to make sure that the would-be criminal knows that if he commits a crime and gets caught, his punishment will be sure and certain. He must know that there will be no escape hatch through which he can avoid a term of years in the penitentiary. He must know in advance exactly how lengthy that prison term is going to be. He must know that no matter how good a lawyer he gets, how experienced, how expensive, how well-known, and how clever and sharp, that lawyer will not be able to keep him out of jail once he has been found guilty in a court of law. And that will be because the laws we pass will henceforth make it abundantly clear that a jail term must be imposed and a jail term must be served.

... [T]he language I originally proposed has been included in the penalty section of this bipartisan bill which will require that for certain crimes involving drugs, the convicted defendant must—I repeat must—be sentenced to the penitentiary. He must serve jail time. He will know that in advance because it will be the law. It will not be a matter of the judge's discretion for these types of crimes. It will be a requirement imposed by law on the sentencing judge.

. . . .

This approach will be applied to all the major drug dealers who are preying upon our society.... We divide these major drug dealers into two groups for purposes of fixing what their required jail terms shall be:

For the kingpins—the masterminds who are really running these operations—and they can be identified by the amount of drugs with which they are involved—we require a jail term upon conviction. If it is their first conviction, the minimum term is 10 years. If it is their second conviction, the minimum term is 20 years....

Our proposal would also provide mandatory minimum penalties for the middle-level dealers as well. Those criminals would also have to serve time in jail. The minimum sentences would be slightly less than those for the kingpins, but they nevertheless would have to go to jail—a minimum of 5 years for the first offense and 10 years for the second.

132 Cong.Rec. S14,301 (daily ed. Sept. 30, 1986).

One of the bill's cosponsors, Senator D'Amato, stated:

[T]his bill provides mandatory prison terms for persons—20 years to life for repeat offenders, or if death or serious bodily injury results—trafficking in specified amounts of certain drugs.

. . . .

The amounts that shall now trigger the most severe minimum prison terms are [those listed in Section 841(b)(1)(A)]. Lower minimum mandatories are provided for those trafficking in smaller amounts of these drugs.

132 Cong.Rec. S14,001 (daily ed. Sept. 27, 1986). See also the statement of Senator Chiles, found at 132 Cong.Rec. S14,288 (daily ed. Sept. 30, 1986) ("The Senate bill contains the Democratic three-tiered penalty system [now found in Sections 841(b)(1)(A)–(C)] which will impose mandatory sentences and large fines against major drug traffickers and kingpins.").

There is also evidence that the Representatives understood that their version of the drug bill had been changed to include mandatory imprisonment. After the Senate's version of H.R. 5484 returned to the House, Representative Oxley inserted into the record this statement: "The legislation addresses the supply problem on several fronts, including ... minimum mandatory prison sentences, and sharply increased fines for major drug traffickers...." 132 Cong.Rec. H9470 (daily ed. Oct. 8, 1986).

The Senate record also contains several interpretations of what became the penalty provision of Section 841(b)(1)(A), whose relevant language is identical to that in Section 841(b)(1)(B), except that the former's minimum and maximum terms of imprisonment and fines are larger. See footnote 2, *supra*. Several Senators understood those penalties to include mandatory prison terms. As the relevant language of Section 841(b)(1)(B) is identical to that found in Section 841(b)(1)(A), these statements illuminate Congress' intent regarding both subparagraphs. Senator Biden, another cosponsor of the bill, observed that "This legislation ... increases penalties for most drug-related offenses, including a mandatory minimum penalty of 10 years imprisonment, and up to life, for the highest level of drug kingpins...." 132 Cong.Rec. S13,747 (daily ed. Sept. 26, 1986). Senator Stennis also stated, "I applaud the proposal of a mandatory minimum sentence of 10 years without parole for major drug dealers." 132 Cong.Rec. S14,098 (daily ed. Sept. 27, 1986). In addition, the Senate's section-by-section analysis of its drug bill noted that under the enhanced penalties scheme, "[t]he most serious drug traffickers, so-called 'drug kingpins', would face a manda-

tory minimum of ten years, and up to life imprisonment." 132 Cong.Rec. S13,779 (daily ed. Sept. 26, 1986).

These numerous and explicit references to mandatory prison terms clearly indicate that Congress intended every sentence imposed under Section 81(b)(1)(B) to include imprisonment. The motivating policy of Congress, the deterrence of drug trafficking, *see* 132 Cong.Rec. S14,301 (daily ed. Sept. 30, 1986) (statement of Senator Byrd), is consistent with this conclusion as to Congress' intent.

Defendant Isaza has brought to my attention a state court case involving a statute "bearing remarkable similarity" to the Anti–Drug Abuse Act amendments. In *Commonwealth v. Gagnon*, 387 Mass. 567, 441 N.E.2d 753 (1982), *cert. denied*, 464 U.S. 815, 104 S.Ct. 70, 78 L.Ed.2d 84 (1983), the Massachusetts Supreme Judicial Court struck down as unconstitutionally vague a statute providing for punishment "by a term of imprisonment ... or by a fine ... or both." The statute further provided that "[a]ny person convicted of violating this subdivision shall be punished by a mandatory minimum one year term of imprisonment." *Gagnon*, 387 Mass. at 568, 441 N.E.2d 753. Although the Court attempted to resolve the statute's inconsistency by looking to the statutory history of the section, it found the statutory history to be "inconclusive." *Id.* at 572, 441 N.E.2d 753. As a further basis for the Court's decision, it noted that in providing for a minimum mandatory sentence of one year imprisonment in the state prison, the challenged section was inconsistent with yet another law which provided that the minimum term of a state prison sentence could not be less than two and one-half years. *Id.* at 572–73, 441 N.E.2d 753.

I do not find *Gagnon* to be persuasive here. In contrast to the Court's futile efforts in *Gagnon*, I am able to resolve the "inconsistency" in the penalty section of the Anti–Drug Abuse Act by looking at the accompanying statutory provisions and legislative history. Where Congress' intent has been expressed so clearly, I will not construe the statute in a way that will frustrate that intent.

### B. *The Focus on Quantity*

In their motions to dismiss, these four defendants also claim that the penalty scheme of Section 841(b)(1) denies them due process because it bases the severity of punishment on the quantity, rather than the purity, of the compound in the accused's possession.[3] More specifically, they argue that the statements of Senator Byrd, quoted in Part A above, show that Congress intended to punish the largest dealers and manufacturers with the most severe penalties, and to provide middle-level dealers with slightly smaller minimum sentences. Congress' failure to classify according to the quality or purity of the narcotic, or according to the role of the defendant in the scheme, purportedly defeats this purpose. The defendants envision a scenario where a mere "street dealer" in possession of cocaine which has been "cut" several times may have to serve a minimum mandatory sentence greater than that imposed on a manufacturer in possession of a smaller, but purer and more valuable, amount of the drug. They claim that the statute thus establishes an irrational presumption that the greater the quantity of the compound in one's possession, the greater one's role is in the hierarchy of the drug processing and distribution network.

The defendants' attack on the statute is not a challenge to the sort of presumption condemned in *Leary v. United States*, 395 U.S. 6, 30, 37, 89 S.Ct. 1532, 1545, 1548, 23 L.Ed.2d 57 (1969), where the trier of fact was allowed to predicate guilt on a fact presumed from a proven fact. Here, guilt

---

**3.** Under the statute, a minimum mandatory sentence of ten years imprisonment may be imposed if a defendant is convicted of possession with intent to distribute five kilograms or more of a mixture containing a detectable amount of cocaine. If the amount of the mixture is less than five kilograms, but at least 500 grams, then the minimum mandatory sentence is five years imprisonment. Barring certain specified circumstances, there is no minimum mandatory sentence for violations involving less than 500 grams of a mixture containing cocaine. 21 U.S. C. § 841(b)(1)(A)–(C).

is not predicated on a presumed fact. Nor is the defendants' attack on due process grounds a challenge to Congress' ability to determine the appropriate punishment for those engaging in prohibited activities. Instead, they argue that Congress' desire to punish more severely those higher up in the drug organization will not necessarily be met through the classification scheme.[4]

Congress was well aware that its scheme did not focus on "the number of doses of the drug that might be present in a given sample." H.R.Rep. No. 845, 99th Cong., 2d Sess., pt. 1, at 12 (1986).[5] Congress instead chose a "market-oriented approach" to focus on those "who are responsible for creating and delivering very large quantities of drugs," including "trafficker[s] in a high place in the processing and distribution chain" and "the managers of the retail level traffic" selling "substantial street quantities." *Id.* at 11–12. While the defendants argue that Congress did not intend to punish a mere "street dealer" more severely than those running the operation, Congress clearly viewed dealers possessing substantial street quantities of drugs as at least "the managers of the retail level traffic" who deserved severe punishment. The classification scheme's focus on quantity is directly related to Congress' desire to punish those in possession of large quantities of drugs.

■ Defendant Isaza also charges that the penalties section violates due process because there is no requirement that a defendant know the amount of narcotics involved before being faced with the minimum mandatory penalties. While criminal offenses requiring no *mens rea* have a "generally disfavored status," *Liparota v. United States*, 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985), Congress

may dispense with this requirement. *See id.* at 427, 105 S.Ct. at 2089. *Liparota* dealt with a statute which provided that persons who knowingly used or transferred food stamp coupons in an unauthorized manner were subject to a fine and imprisonment. The Supreme Court held that in prosecutions under this statute, the government would have to prove that the defendant knew his actions were illegal. *Id.* at 426–27, 105 S.Ct. at 2088–89. The Court stressed that its construction

> is particularly appropriate where, as here, to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct.
>
> . . . .
>
> In addition, requiring *mens rea* is in keeping with our long-standing recognition of the principle that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.' ... Although the rule of lenity is not to be applied where to do so would conflict with the implied or expressed intent of Congress, it provides a time-honored interpretative guideline where the congressional purpose is unclear.

*Id.* (citations omitted).

■ This rationale is not applicable to the present case, for Section 841(b)(1) does not criminalize apparently innocent conduct. Nor does the rule of lenity apply where Congress' intent not to require a showing of knowledge is clear. *Cf. United States v. Holland*, 810 F.2d 1215 (D.C.Cir. 1987) (applying similar analysis to statute providing enhanced penalties for drug traffickers selling drugs near schools). Moreover, the element of *mens rea* is present in the statute, for intent to distribute must still be proven, even if knowledge of the precise quantity of the drug involved need

---

**4.** The defendants do not claim that if convicted, they would fall into the class of individuals treated unfairly by the statute. As they understandably choose not to divulge their roles, if any, in the alleged drug ring at this time, I pass over the standing issue raised by the government and proceed directly to the merits of their claim.

**5.** As explained in Part A, *supra*, this House report dealt with an early version of the bill which

was finally enacted as the Narcotics Penalties and Enforcement section of the Anti–Drug Abuse Act of 1986. Although the quantities of drugs which triggered the various penalties differed from those enumerated in the final version of the bill, the classification scheme discussed in the House Report was similar to that in the present statute in that the penalties were based on the quantity, not purity, of the substance involved.

not be shown. Congress' desire to swiftly and surely punish drug traffickers supports its decision not to require a showing of knowledge of the amount of drugs involved as long as possession with intent to distribute can be proven.

## II. *Equal Protection Claims*

■ The four defendants also charge that the penalties section violates equal protection because the classification scheme bases punishment on the quantity of drugs involved, without regard to purity or the role played by the accused. They claim this scheme is arbitrary and bears no substantial relation to a legitimate government interest.

The defendants do not argue that Section 841(b)(1) is subject to heightened scrutiny in the equal protection analysis, nor could they. The statute does not proscribe activities that are legally protected, much less "fundamental," nor have they shown that it involves a "suspect class." *See United States v. Cohen,* 733 F.2d 128, 133–35 (D.C. Cir.1984); *United States v. Holland,* 810 F.2d 1215 (D.C.Cir.1987). Thus, the legislation "carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Hodel v. Indiana,* 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981). For the reasons described in the due process analysis in Part I(B), I conclude that the classification bears a rational relation to Congress' purpose to punish those trafficking in large quantities of drugs, regardless of the purity of the substance, and regardless of whether the accused played a major or more peripheral role in the scheme.

## III. *Eighth Amendment Claim*

■ Defendant Isaza also claims that the minimum mandatory penalties provided under the statute constitute cruel and unusual punishment in violation of the eighth amendment. A criminal sentence must be proportionate to the crime for which the defendant has been convicted. *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). In reviewing sentences under the eighth amendment, I am to grant "substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes.... But no penalty is *per se* constitutional." *Id.* The three objective factors I am to consider are (1) the gravity of the offense and harshness of penalty; (2) the comparison with sentences imposed on other criminals in the same jurisdiction; and (3) the comparison with sentences imposed for commission of the same crime in other jurisdictions. *Id.* at 290–92, 103 S.Ct. at 3009–10.

In applying the first factor, I do not feel the penalty of which Isaza complains, a minimum mandatory sentence of five years without probation or parole, is so severe that it violates the eighth amendment in light of the gravity of the offense, possession with intent to distribute at least 500 grams of a substance containing cocaine.[6] Congress has made the determination that persons possessing that quantity of the drug constitute major traffickers and managers of the retail level traffic, *see* remarks of Senator Byrd, 132 Cong.Rec. S14,301 (daily ed. Sept. 30, 1986), and imposed the minimum mandatory penalty as a deterrent to such activities. *Id.* In light of the severity of the crime and drug-related problems in today's society, the penalty is not so high as to be unconstitutional.

Isaza fares no better when the second factor is considered. He attempts to portray drug trafficking as a less serious crime than other offenses which carry lesser penalties, such as armed bank robbery, for which the penalty is 0–25 years. Isaza claims that armed bank robbery is a more serious offense than drug trafficking because the latter is a "nonviolent crime." I reject both his comparison of the two crimes and his classification of drug trafficking as nonviolent. As Senator Kennedy

---

**6.** Isaza also argues the unconstitutionality of the penalty provided in Section 841(b)(1)(A), a minimum mandatory sentence of ten years for violations involving at least five kilograms of a substance containing cocaine. I do not consider this argument, as there is nothing in the indictment to indicate that this penalty provision could be applicable to Isaza.

remarked during the debate on the Anti–Drug Abuse Act, "The widespread use of illegal drugs is one of the most pressing problems facing our society. Illegal drugs are killing children and destroying families. Vast profits from the sale of illegal drugs have created a new criminal underworld which promotes violence and feeds on death." 132 Cong.Rec. S14,282 (daily ed. Sept. 30, 1986). I will not second-guess Congress' determination that the harm to society caused by the distribution of illegal drugs is so grave that the minimum mandatory penalties are necessary to act as a deterrent.

The third factor calls for a comparison with the imposition of sentences in other jurisdictions for the same crime. As all the sentences imposed under the statute must meet the challenged mandatory minimum requirement, I look instead to sentences imposed for similar crimes. Harsher sentences handed down by the federal courts for drug possession crimes have withstood constitutional challenges. In *United States v. Wardlaw*, 576 F.2d 932, 937 (1st Cir.1978), the Court of Appeals for the First Circuit stated that two concurrent ten year sentences imposed on a "mule" (a mere carrier of contraband rather than a narcotics dealer) did not violate the eighth amendment.[7] In *United States v. Sanchez*, 508 F.2d 388, 398 (5th Cir.), *cert. denied*, 423 U.S. 827, 96 S.Ct. 45, 46 L.Ed.2d 44 (1975), a maximum sentence of fifteen years for conspiracy to distribute cocaine was held not to be cruel and unusual punishment, even though it was imposed on a first offender. I conclude the mandatory sentences under Section 841(b)(1)(B) do not violate the eighth amendment.

## IV. *Ex Post Facto Claim*

Count one of the superseding indictment charges a conspiracy to possess with the intent to distribute 500 grams or more of a substance containing cocaine. That count avers that the conspiracy began by at least early 1985 and continued to about November 22, 1986. The count is drafted to trigger the increased penalties of Section 841(b)(1)(B), which became effective on October 27, 1986. Defendant Yarid contends that the count violates the Constitution's prohibition against *ex post facto* laws, because the conspiracy charged here dates back to early 1985. He moves to dismiss so much of count one as alleges acts or events occurring prior to October 27, 1986.

The *ex post facto* prohibition "forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (citations and footnote omitted). The prohibition applies to additional punishment because of "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Id.* at 30, 101 S.Ct. at 965. Yarid claims that if he is convicted, the imposition of the increased penalties for activities occurring before their enactment would constitute a violation of that prohibition.

The government's opposition, while not conceding the correctness of Yarid's position, states that if Yarid were to be convicted, it would not seek imposition of the increased penalties for his participation in the conspiracy charged in count one. At a hearing on this motion, the government confirmed this position.[8] If Yarid is convicted under count one, the government will instead seek to have him sentenced under the penalty provisions of the statute which were in effect before the enactment of the new statute. Imposition of these provisions will not violate the prohibition against *ex post facto* laws, as those provisions were in effect before the date Yarid

---

7. The statute under which the defendants were sentenced did not set forth mandatory sentences. As the judge failed to "individualize" the sentences, the Court did remand for sentencing. *Wardlaw*, 576 F.2d at 938–39.

8. Obviously, if the government takes this position with Yarid, it is bound to take the same stance with other defendants who are in the same position.

allegedly entered the conspiracy. In light of the government's position on this issue, I need not decide whether application of the new penalties to those participating in the conspiracy, which predates October 27, would violate the prohibition against *ex post facto* laws. Accordingly, Yarid's motion to dismiss is denied.

## V.

In accordance with the above, the defendants' motions to dismiss are denied.

SO ORDERED.