COMMONWEALTH *vs.* JOHN G. GRANT & SONS CO., INC.

Norfolk. May 5, 1988. — August 3, 1988.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Wetlands Protection Act. Practice, Criminal,* Sentence. *Statute,* Construction. *Due Process of Law,* Vagueness of statute. *Limitations, Statute of. Municipal Corporations,* Conservation commission. *Constitutional Law,* Search and seizure. *Search and Seizure,* Open fields, Wetlands.

A corporate defendant charged in a criminal proceeding with violation of a statute regulating economic activity, that claimed that the applicable penalty provisions were unconstitutionally vague, was permitted to assert only its own rights and not the rights of others who might be affected differently. [154]

On the assumption that a corporate defendant had been validly convicted of violating G. L. c. 131, § 40, the Wetlands Protection Act, the imposition of a fine on the defendant would not be a denial of its Federal or State due process rights, notwithstanding the two distinct and dissimilar penalty provisions of G. L. c. 131, § 40, and c. 131, § 90, as in effect prior to the amendments accomplished by St. 1987, c. 174, so long as the judge, in imposing sentence, observed restraints on the permissible range of fines derived from the two penalty provisions. [154-158]

Permitting unlawfully placed fill to remain on particular premises, although a continuing wrong warranting injunctive relief, is not a criminal offense under G. L. c. 131, § 40, the Wetlands Protection Act. [157]

Where, at the trial of a criminal complaint framed under G. L. c. 131, § 40, the Wetlands Protection Act, the judge had erroneously ruled that the continuing presence of fill material, once it was unlawfully deposited on certain premises, constituted a separate and continuing offense each day it remained and, in consequence of that ruling, permitted the admission of evidence of violations occurring more than two years prior to the commencement of the proceeding, the defendant was entitled to a new trial, at which only evidence of violations occurring within the two-year period of limitations would be admitted. [158-159]

General Laws c. 131, § 40, the Wetlands Protection Act, did not authorize a municipal conservation commission or its agents to enter upon a defendant's land to inspect for violations of law. [159-160]

Even if this court were to accept, as appropriate under State constitutional law, the principle articulated by the United States Supreme Court that

"open fields" are not protected by the Fourth Amendment to the Federal Constitution, the record of a criminal proceeding under G. L. c. 131, § 40, the Wetlands Protection Act, did not permit a conclusion that the Commonwealth had met its burden of showing the lawfulness of a series of searches and seizures on the defendant's premises. [160-161]

The evidence at the trial of a complaint charging a violation of G. L. c. 131, § 40, the Wetlands Protection Act, was sufficient to warrant a jury in finding that the premises concerned were a fresh water wetland subject to flooding, that there had been filling of the wetland, and that the filling had been done by the defendant. [161-162]


COMPLAINT received and sworn to in the Quincy Division of the District Court Department on June 10, 1985.

On transfer to the jury session of the Dedham Division, the case was tried before *Charles E. Black*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*James M. Burke* for the defendant.

*James A. Paisley*, Special Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant corporation was found guilty by a jury on a complaint charging it with filling or altering a fresh water wetland subject to flooding in violation of G. L. c. 131, § 40, and of a by-law of the town of Braintree. The judge imposed a fine of $87,500 for the violation of § 40 and placed the conviction for the violation of the by-law on file.[1]

The defendant appealed. The Appeals Court concluded that the provisions concerning the penalty to be imposed for a violation of § 40 were unconstitutionally vague, and that the verdict must be set aside and the complaint dismissed as to the alleged violation of § 40. *Commonwealth* v. *John G. Grant & Sons Co.*, 24 Mass. App. Ct. 690, 693 (1987). We granted the Commonwealth's application for further appellate review to consider the question whether due process principles com-

---

[1] The appeal is focused solely on the conviction pursuant to G. L. c. 131, § 40. The parties appear to agree that the conviction for the violation of the by-law stands or falls with the conviction under § 40.

pelled the result reached by the Appeals Court.[2] We conclude that the two provisions prescribing penalties for violations of § 40 can be construed to allow the imposition of a fine on the defendant without violating its right to due process of law. We then proceed to consider issues that, in light of its conclusion on the due process challenge to § 40, the Appeals Court did not need to discuss. We conclude that there must be a new trial.

The defendant operates a business on premises at 60 Garden Park in Braintree. Its principal activities are the demolition of buildings and the rental of heavy equipment. From time to time, there are large piles of scrap metal and rubbish on the site. As we shall explain later, the evidence would have warranted a finding that the portion of the premises allegedly filled by the defendant was a fresh water wetland subject to flooding. The principal factual contest at trial was whether the defendant had filled the area. The defendant contended at trial that any filling had been done by predecessors in title. The Commonwealth presented evidence of the filling of a portion of the wetland on the site on various occasions while the defendant owned the property.

1. The defendant argues that, because G. L. c. 131 has two distinct and dissimilar provisions prescribing penalties for the violation of § 40, the statutory pattern is unconstitutionally vague in violation of its right to due process of law and the complaint must be dismissed. The concept that a criminal statute may be void for vagueness is based in part on the principle that a person should be able to know what conduct is criminal and what will be the consequences to him of a violation of that statute. See *United States* v. *Harriss*, 347 U.S. 612, 617 (1954); *Commonwealth* v. *Jasmin*, 396 Mass. 653, 655 (1986). The concept is also founded in part on the principle that the statute should provide sufficient standards to control prosecutorial and judicial discretion. See *Grayned* v. *Rockford*, 408 U.S. 104, 108-109 (1972); *Commonwealth* v. *Williams*, 395

---

[2] We have found no indication that the defendant raised this issue at the trial level, but, because the Appeals Court considered the point and the Commonwealth does not challenge the defendant's right to make this argument on appeal, we decide the issue.

Mass. 302, 304-305 (1985). Economic regulatory legislation, as here, is subject to a less strict vagueness test than legislation, for example, inhibiting the exercise of constitutionally protected rights of free speech or of association. See *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-499 (1982); *Commonwealth* v. *Sefranka*, 382 Mass. 108, 110-111 (1980). In the circumstances, the defendant may assert only its right and not those of others who might be affected differently. *Commonwealth* v. *Jasmin, supra* at 655. The defendant makes no claim that it has greater rights under the State Constitution than under the Constitution of the United States.

In this case there is no claim that § 40 does not state with sufficient clarity that the filling or altering of certain areas, such as wetlands, is unlawful unless the procedural and substantive requirements of § 40 are complied with. In other words, the defendant does not assert that § 40 is unclear or vague, in a constitutional sense, with respect to the conduct made unlawful. The problem arises because § 40 itself sets forth penalties for its violation,[3] and G. L. c. 131, § 90, does so as well, but in different terms.[4]

Because the defendant is a corporation and corporations cannot be imprisoned, we need focus only on the range of fines set forth in the two sections. Section 40 prescribes a fine of not more than $1,000 for its violation and provides that each

---

[3] The last paragraph of § 40, as appearing in St. 1974, c. 818, § 1, and prior to its amendment by St. 1987, c. 174, § 19, provided as follows: "Whoever violates any provision of this section shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than six months or both. Each day or portion thereof of continuing violation shall constitute a separate offense. This section may be enforced by natural resource officers, deputy natural resource officers, and any officer having police powers."

[4] The fifth paragraph of G. L. c. 131, § 90, as appearing in St. 1971, c. 149, before it was struck out by St. 1987, c. 174, § 21, provided as follows: "Whoever violates any provision of section forty, or of any rule or regulation made under authority thereof, shall be punished by a fine of not less than one hundred dollars nor more than five thousand dollars, or by imprisonment for not more than two years, or both."

day of continuing violation shall constitute a separate offense. Section 90 provides a fine of not less than $100 nor more than $5,000 for a violation of § 40. There is no doubt that the Legislature intended that a fine could be imposed on a corporation for its violation of § 40. If we construe the two statutes so that each imposes restraints on the permissible fine, so that the total fine for all acts of the same character in violation of § 40 at the same site cannot exceed $5,000 (§ 90) and the fine for each act in violation of § 40 cannot exceed $1,000 (§ 40), the defendant can hardly complain that it was not on notice of that potential penalty. In so doing, we construe the statutory enactments in the defendant's favor and impose on the defendant a penalty falling with the limitations of each statute. This construction fulfils, as far as possible, the twice expressed legislative purpose that a corporation should be fined for violation of § 40. As will be seen, this approach meets the requirements of due process under the decided cases. If we apply this construction of the penalty provisions of G. L. c. 131, §§ 40 and 90, the defendant could not have been misled and the prosecutor and any sentencing judge would have no impermissible range of discretion.

The principle that no one may be required at his peril to speculate as to the meaning of a criminal statute applies to sentencing as well as to substantive provisions. See *Commonwealth* v. *Gagnon,* 387 Mass. 567, 569 (1982), citing *United States* v. *Batchelder,* 442 U.S. 114 (1979), and *United States* v. *Evans,* 333 U.S. 483 (1948). In the *Evans* case, the statute simply failed to provide a penalty for certain conduct which it made criminal. The Court held that the problem could not properly be resolved by judicial interpretation and thus was beyond the competence of the Court. *Id.* at 495. That case, consequently, was not a void for vagueness case. It involved an absence of a stated penalty rather than, as here, an excess of penalty provisions. The *Batchelder* case is more instructive for our purposes. There, two statutes made the same conduct criminal and prescribed different maximum penalties. The defendant was found guilty under the statute having the higher maximum penalty, and the Supreme Court upheld a sentence

based on that provision. The Court said: "Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments. So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied." *Id.* at 123.

The Appeals Court concluded that the penalty provisions of G. L. c. 131, concerning a violation of § 40 were impermissibly vague substantially on the basis of this court's holding in *Commonwealth* v. *Gagnon, supra.* We think this case presents a far less serious level of uncertainty than the *Gagnon* case did and does not require dismissal of the charges. In the *Gagnon* case, the conflict between the legislative directions was substantial and irreconcilable. One provision allowed punishment by imprisonment or a fine, or both. Another provision mandated a minimum one-year term of imprisonment. There was no basis on which the inconsistency could be resolved. There was, for example, no instructive legislative history. Contrast *United States* v. *Restrepo,* 676 F. Supp. 368, 375 (D. Mass. 1987), in which the judge, confronted with a problem similar to that presented in the *Gagnon* case, concluded that the legislative history resolved the dilemma.

In the case before us we have no fundamental inconsistency between the two penalty provisions. In the *Gagnon* case, there was, in contrast, a provision for a mandatory prison sentence which conflicted with a provision authorizing simply the imposition of a fine. Here the penalty of a fine is an option, indeed as to a corporation the only option, under each statutory provision. The only possible uncertainty is the amount of the fine.

Although we agree with the Appeals Court that neither penalty provision is more specific than the other and thus controlling (*Commonwealth* v. *John G. Grant & Sons Co.,* 24 Mass. App. Ct. 690, 691-692 [1987]), we see no such wide disparity of potential sentences under the two provisions as did the Appeals Court. See 24 Mass. App. Ct. at 692. The Appeals Court concluded, by implication, that each day unauthorized

fill remained on the premises warranted a separate fine. On that theory a fine of $1,000 a day under the penalty provisions of § 40, over a period of more than two years, presented a substantial potential variation from the maximum fine of $5,000 under § 90. *Id.*

The defendant properly had argued in the trial court and on appeal that it was charged with filling or altering a fresh water wetland and not with leaving fill on such a wetland. Indeed, it argues correctly that § 40 does not make a crime of leaving unauthorized fill in a wetland. Section 40 provides in its last paragraph that each day of continuing violation (e.g., each day of filling or altering) constitutes a separate offense. That language avoids the treatment of all acts of unlawful filling as a single, continuous offense. See *Commonwealth* v. *Donovan,* 395 Mass. 20, 29 (1985); *Commonwealth* v. *Peretz,* 212 Mass. 253, 254 (1912). This criminal statute cannot properly be construed, however, as making a daily criminal wrong of the continuing presence of fill unlawfully placed on particular premises. The presence of the unauthorized fill is a continuing wrong warranting injunctive relief, but the presence of unauthorized fill is not a criminal act, continuing or otherwise, under § 40. The potential disparity of sentences under the two penalty provisions is not, therefore, so great as the Appeals Court believed.[5]

We conclude, consequently, that the imposition of a fine on the defendant in this case, assuming a valid conviction under § 40, would not be a denial of due process of law under either the State Constitution or the Constitution of the United States if the restraints on the permissible range of the fine, derived from each statute, are imposed. Thus the complaint against the defendant should not be dismissed, as the Appeals Court

---

[5] One problem with making the continued presence of unlawfully placed fill either a separate daily offense or a continuing offense warranting a daily fine is that the removal of the material would also be a crime unless the owner complied with the permit provisions of § 40 and obtained permission to remove the material. There was discussion in the sentencing phase of this case suggesting that the removal of any unlawfully placed fill might be more harmful to the environment than leaving it there.

directed. We, therefore, turn to the defendant's other challenges to its convictions.

2. The defendant argues that the complaint charged only one offense, and that it was barred by the applicable two-year statute of limitations. G. L. c. 131, § 91 (1986 ed.). The proceeding was commenced by a complaint dated June 10, 1985 (see Mass. R. Crim. P. 3[a], 378 Mass. 847 [1979]), alleging violations of G. L. c. 131, § 40, and the cognate Braintree by-law "on or about November 3, 1982, and thereafter." The defendant did not directly raise the statute of limitations issue before trial or during trial, although it could have done so in various ways.[6] The Commonwealth does not challenge, however, the defendant's right to raise the statute of limitations issue on appeal, and we think we should consider it.

At various stages in the pretrial proceedings, and at trial, the judge ruled that the offense was a continuing one or that, once fill had been unlawfully deposited, its continuing presence permitted the imposition of a daily fine of $1,000. We already have stated our disagreement with the idea that § 40 defines a continuing offense, that is, that once fill is unlawfully deposited, each day the fill remains in place is a separate offense or a continuation of the offense warranting a separate fine. The judge's ruling that the offense was a continuing one improperly permitted the admission of evidence of violations occurring more than two years prior to the commencement of the proceeding.[7]

There must be a new trial because the case was tried and presented to the jury on the basis of the judge's erroneous ruling that it did not matter when the defendant placed the fill

---

[6] For example, by objection to the admission of evidence or by a request for jury instructions limiting the time within which the jury could find a violation.

[7] At trial the judge also allowed evidence to be admitted of violations allegedly occurring after the date of the complaint and allowed the jury to consider postcomplaint violations as violations charged under the complaint. On appeal the defendant does not challenge that action. Evidence of crimes committed after the date a complaint was issued cannot properly be the basis of a conviction.

on the wetland because the complaint charged, and § 40 defined, a continuing offense. Because the statute of limitations is two years, only an offense occurring within two years prior to the date the prosecution was commenced may be the basis of any conviction in this case on retrial. The Commonwealth may wish to consider whether it should move to amend the complaint to set forth each offense in a separate count of the complaint. See Mass. R. Crim. P. 9 (a) (2), 378 Mass. 859 (1979). If the complaint is not so amended, the defendant is entitled to the bill of particulars that it sought before trial. The bill of particulars should set forth the approximate range of time or date when the defendant is alleged to have violated the statute and the by-law.

3. The defendant moved before trial to suppress evidence obtained as a result of warrantless searches or inspections of the premises that the Braintree conservation commission and its agents conducted without the defendant's permission. The commission's chairman at the time of these inspections testified that he had been on the defendant's property five or six times to check for violations. On four occasions he took photographs, and on several occasions he took samples of materials from the site. On some occasions the owner told him that he was not authorized to go on to the premises. He never obtained a search warrant, nor at any time did he obtain permission to go on the premises or to remove materials. Other members and agents of the commission also went on the site.

The motion judge accepted the Commonwealth's argument that members and agents of the conservation commission lawfully entered on the land pursuant to authority granted by G. L. c. 131, § 40. The defendant argues that, because the conservation commission and its agents have no duties under § 40 to gather evidence or to prosecute complaints for violations of § 40, they had no authority to conduct warrantless searches of wetlands and other areas subject to § 40.

We agree with the defendant that § 40 does not authorize a conservation commission or its agents to enter on private land to inspect for violations of law. Section 40 does state that "the conservation commission and its agents, officers and employ-

ees . . . may enter upon privately owned land for the purpose of performing their duties under this section." The responsibility for enforcement of § 40, however, is placed on "natural resource officers, deputy natural resource officers, and any officer having police powers." See G. L. c. 131, § 40, last paragraph, as appearing in St. 1974, c. 818, § 1.[8] A conservation commission's duties under § 40 involve the processing of applications filed concerning proposed undertakings on lands subject to § 40. Because enforcement is not one of the duties of a conservation commission under § 40, a commission member or an agent of a commission as such has no duty or authority under § 40 to conduct a warrantless search of premises in circumstances such as these. A general grant to roam at will through all areas in a municipality that are subject to § 40 in search of unlawful conduct would present substantial constitutional questions. We are persuaded that the Legislature intended no such broad grant of authority. Section 40 does not even grant a right to conduct warrantless inspections to police officers who are explicitly authorized to enforce § 40.

On his own, the judge advanced the Supreme Court of the United States' open fields doctrine as an independent basis for his denial of the defendant's motion to suppress. See 1 W.R. LaFave, Search and Seizure, § 2.4 (a) (2d ed. 1987). On appeal the Commonwealth has endorsed the judge's invocation of the open fields doctrine. The principle in general is that open fields are not protected by the Fourth Amendment to the United States Constitution. See *Oliver* v. *United States,* 466 U.S. 170, 180 (1984). It is not clear that land developed for commercial uses falls into the open fields category. See *id.* at 180 n.11. This court has not adopted a parallel principle under art. 14 of the Massachusetts Declaration of Rights, which defines the scope of its protection in language somewhat different from that of the Fourth Amendment.

We are not persuaded that, even if we were to accept the open fields principle as appropriate under art. 14 of the Declar-

---

[8] That paragraph was amended by St. 1987, c. 174, § 19, to delete the reference to deputy environmental officers.

ation of Rights, the evidence was sufficient to allow a conclusion that the Commonwealth had met its burden of showing the lawfulness of each search and seizure on the defendant's premises. The judge made no findings of fact. The chairman of the conservation commission testified that, prior to his entrance on some locations, the owner had advised him that he was not authorized to go on the premises. On one occasion the owner asked the police to remove him when he went onto the premises after the owner had told him not to do so. Unless the judge disbelieved this uncontroverted evidence of the owner's objection to entry onto its property, and there is no indication that he did, certain evidence admitted at the trial appears to have been seized as a result of a criminal trespass onto the defendant's property. The judge made no ruling that a warrantless search was justified on some traditional exception to the warrant requirement.[9] Without findings concerning the circumstances of each occasion on which the chairman of the conservation commission (and others) entered the defendant's property unlawfully and contrary to the owner's explicit direction not to do so, we are unwilling to conclude that photographs, observations, and particularly materials taken were not obtained in violation of the defendant's rights under art. 14 (and perhaps even under the Fourth Amendment). There must be further findings as to the searches and seizures that produced evidence relevant to the proof of alleged violations occurring within two years of the filing of the complaint, if the Commonwealth wishes to rely on that evidence at any retrial.

4. The judge denied the defendant's motion for a required finding of not guilty. The defendant argues that the Commonwealth failed to prove that it altered or filled a fresh water wetland subject to flooding.[10] We conclude that the evidence was sufficient to present a jury question.

---

[9] It seems reasonably clear that the police had probable cause and could have obtained a search warrant.

[10] The complaint alleged that the defendant altered or filled a fresh water wetland subject to flooding. There also was evidence that the filled land bordered on a river. We do not pause to decide whether the unauthorized filling of a fresh water wetland bordering a river would violate § 40 only if it is proved that the area was subject to flooding. We deal here with the allegations of the complaint.

There was testimony from several qualified people that the property had wetland vegetation, as defined in § 40, and that it was a wetland or a swamp. Several witnesses saw standing water on the site. It is not easy to sort out whether any of this testimony may be subject to suppression for reasons discussed in the next prior section of this opinion. It is easy, however, to see that at least some of the credible evidence concerning the nature of the site was not subject to any such taint and warranted a finding that the area allegedly filled had been a fresh water wetland.

On the question of flooding, the town engineer testified that the property was in the floodplain of the Monadiquot River and that, whenever a large flood occurs on the river, the swampy area on the site would be under water. A flood insurance rate map promulgated by the Federal Emergency Management Agency, the admission of which in evidence the defendant does not challenge on appeal, showed the defendant's property to be within the 100-year floodplain.

The evidence also warranted a finding that there had been filling of the wetland and that the filling was done by the defendant. There was testimony, for example, that in November, 1984, an earth moving vehicle was seen pushing debris into the wetlands. The debris appeared to be building material of the type the defendant carried onto its property.

We are not able to say that the Commonwealth will be unable to prove its case even if evidence acquired on the site is suppressed. See *Commonwealth* v. *Brouillet,* 389 Mass. 605, 608 (1983); *Commonwealth* v. *Taylor,* 383 Mass. 272, 284-285 (1981). There is no basis for ruling that the defendant was entitled to a required finding of not guilty.

5. The judgment is vacated. The jury verdict is set aside, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*